UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

--------------------------------

AIRFRAME SYSTEMS, INC. f/k/a
AIRLINE SOFTWARE, INC.,

     Plaintiff,

        v.

Case Number
1:08-cv-11940-WGY

RAYTHEON COMPANY and
L-3 COMMUNICATIONS CORPORATION,

     Defendants.

--------------------------------


ORAL DEPOSITION OF
HECTOR A. ARCE
CORPORATE REPRESENTATIVE OF
L-3 COMMUNICATIONS CORPORATION
PURSUANT TO
FRCP RULE 30(b)(6)


April 23, 2010



L-3 Communications Corporation
10001 Jack Finney Boulevard
Greenville, Texas   75402



Tommi Rutledge-Gray, RPR, CRR, CSR-1693

1

2

3

4                          Friday, April 23, 2010

5                          9:08 a.m.

6

7

8

9

10

11        Oral Deposition of Hector A. Arce, Corporate

12   Representative of L-3 Communications Corporation

13   Pursuant to FRCP Rule 30(b)(6), held at the

14   offices of L-3 Communications Corporation, 10001

15   Jack Finney Boulevard, Greenville, Texas  75402,

16   before Tommi Rutledge-Gray, Texas CSR No. 1693,

17   Registered Professional Reporter, and Certified

18   Realtime Reporter.

19

20

21

22

23

24

25

```
 1                 APPEARANCES OF COUNSEL

 2

    On behalf of the Plaintiff, Airframe Systems, Inc.
 3  f/k/a Airline Software, Inc.:
            FRANK W. GEROLD, ESQ.
 4          11767 Katy Freeway
            Suite 520
 5          Houston, Texas  77079-1728
            713.223.4000
 6          281.589.9004 - Fax
            e-mail:  geroldlaw@pdq.net
 7

 8

 9  On behalf of the Defendants, Raytheon Company and
    L-3 Communications Corporation:
10          Alan M. Gelb, Esq.
            JONES HIRSCH CONNORS & BULL PC
11          One Battery Park Plaza
            New York, New York  10004
12          212.527.1347
            212.527.1680 - Fax
13          e-mail:  agelb@jhcb.com

14

15
    ALSO PRESENT:
16          Gary Hopkins, Esq.

17

18

19

20

21

22

23

24

25
```

1                    HECTOR A. ARCE,

2    the witness hereinbefore named, being duly sworn

3    to testify the truth, the whole truth, and nothing

4    but the truth, testified under oath as follows:

5                        EXAMINATION

6    BY MR. GEROLD:

7         Q.    Would you state your name for the

8    record, please.

9         A.    Hector Arce.

10              MR. GELB:  Before we do that, can

11   we note for the record that this deposition is

12   being conducted under Court Order of the District

13   of Massachusetts, as ordered April 13 and April

14   15, 2010.

15   BY MR. GEROLD:

16        Q.    Have you ever had your deposition

17   taken before?

18        A.    Yes.

19        Q.    You're familiar with the fact that

20   you've been given an oath, and you have to answer

21   truthfully to the questions I ask?

22        A.    Yes.

23        Q.    Okay.  You also understand that

24   unless instructed not to answer the questions by

25   your counsel, that you must answer these questions

1       Q.      All right.  And that maintenance had

2   to be tracked ultimately to and through the

3   Netfinity computer, correct?

4       A.      Yes.

5       Q.      Was the Netfnity computer the only

6   computer at L-3 in the entire time that you worked

7   here that performed aircraft maintenance tracking?

8       A.      At L-3?  I don't know.

9       Q.      How about in Greenville?

10      A.      I don't even know about Greenville.

11  I can only tell you about Proprietary Systems, my

12  little organization.

13                  MR. GELB:  Proprietary

14  Programs?

15                  THE WITNESS:  Proprietary

16  Programs.

17  BY MR. GEROLD:

18      Q.      Well, one of the areas that you were

19  designated to testify on on behalf of L-3 was the

20  implementation and use of aircraft maintenance

21  tracking programs.

22                  Do you understand that?

23      A.      Yes.

24      Q.      Okay.  Now have you made a search or

25  an inquiry as to the use of the aircraft

1    maintenance tracking programs utilized by L-3?

2        A.    Yes.

3        Q.    Okay.  Did that cover any span of

4    time?

5        A.    The, I guess, current time frame.

6        Q.    There was no time limit in the

7    Deposition Notice or Subpoena, was there?

8        A.    I don't know.

9        Q.    Did you read the Deposition Notice

10   and Subpoena to determine what was or was not

11   responsive to the Documentary Requests?

12       A.    I read it, and I provided any

13   information that I could find.

14       Q.    So you're not here today prepared in

15   any way to address the past uses of the aircraft

16   maintenance tracking software by L-3; is that

17   correct?

18                   MR. GELB:  Well, other than

19   he's got in his affidavit.  You might ask him

20   about that.

21       A.    That's the only information I have,

22   is the information in this affidavit,

23   (indicating).

24                   MR. GEROLD:  Objection.

25   Nonresponsive.  Could you read the question back,

1        Q.      Well, the Deposition Notice also

2   asked you about the L-3 Mission Integration

3   Division, correct?

4        A.      Correct.

5        Q.      And it also asked you about any other

6   L-3 division or business or reporting unit, isn't

7   that correct?

8        A.      I'll have to go look at the --

9        Q.      If you look at the Deposition

10  Subpoena that's marked as Exhibit 12, --

11                   MR. GELB:  You'll find,

12  Counsel, that the Notice was objected to as going

13  far beyond the issues in the case.

14                   AM&M is the only division identified

15  by your client as having used either ASI or M3

16  software, and that was the limit of his inquiry

17  as -- in compliance with counsel's direction.

18                   MR. GEROLD:  Object to

19  sidebar.

20  BY MR. GEROLD:

21       Q.      Sir, do you have that Deposition

22  Notice in front of you?

23       A.      Yes.

24       Q.      All right.  And at the bottom of the

25  first page and carrying over to the second page,

1    you were asked to testify about a number of things

2    as the Designated Representative of L-3, correct?

3         A.    Yes.

4         Q.    And one of those was "the use of

5    aircraft maintenance, modification, and/or

6    tracking software or computer programs in the AM&M

7    division of L-3 Communications Corporation,"

8    correct?

9         A.    Yes.

10        Q.    The same topic with respect to the

11   L-3 Mission Integration Division, correct?

12        A.    Yes.

13        Q.    And following that, you were also

14   asked to come here today and testify about the use

15   of aircraft maintenance, modification, and/or

16   tracking software or computer programs in any

17   other L-3 division or business or reporting unit,

18   isn't that correct?

19        A.    Yes.

20        Q.    Okay.  Now you did not make an

21   inquiry of all other L-3 division or business or

22   reporting units in preparation for your testimony

23   today, isn't that correct?

24        A.    "All," that is correct.

25        Q.    Okay.  Why not?

Page 58

1      A.      AM&M is the group or the division

2  which was asked for, and I guess the Mission

3  Integrated Systems here was what I was asked for.

4      Q.      So it's fair to say that you're not

5  in compliance with the Subpoena for today's

6  deposition?

7              MR. GELB:  That's a legal --

8  that's a legal answer you're asking him for.  He

9  does not have to answer that.  And I will tell

10  you, Counsel, that under the objections we made,

11  the limit was set, and he has been in full

12  compliance.

13  BY MR. GEROLD:

14      Q.      You have not come here today to talk

15  about the use of aircraft maintenance,

16  modification, and/or tracking software or computer

17  programs in any L-3 division or business or

18  reporting unit, other than the AM&M division; is

19  that correct?

20      A.      No.

21      Q.      Well, what -- I think you just told

22  me that you did not make an inquiry as to the use

23  of aircraft maintenance, modification, and/or

24  tracking software or computer programs in all

25  divisions or business or reporting units of L-3?

1        A.      You said "all."  We did in C3ISR,

2   which is part of the MID organization.

3        Q.      But that doesn't comprise "all

4   division or business or reporting units of L-3,"

5   isn't that correct?

6        A.      But you had asked me all, so I did

7   some, but not all.

8        Q.      Some, but not all, correct?

9        A.      Correct.

10       Q.      So your inquiries today were

11   restricted to solely the use of aircraft

12   maintenance, modification, and/or tracking

13   software or computer programs in the company's

14   divisions and business groups that fall under the

15   umbrella of the Mission Integration Division; is

16   that correct?

17       A.      No.  You've said two different

18   things.  "Business segments" and "divisions" are

19   not the same --

20       Q.      Okay.

21       A.      -- in your context there.

22       Q.      Okay.  Well, you said that you

23   limited your inquiry for today's deposition to

24   which group?

25       A.      Which group?

Page 60

1        Q.      Yes, sir.

2        A.      The Integrated Systems Group.

3        Q.      All right.  And you made no inquiry

4   as to any other group of L-3 outside the

5   Integrated Systems Group to determine their use of

6   aircraft maintenance, modification, and/or

7   tracking software or computer programs; is that

8   correct?

9        A.      Correct.

10       Q.      Even though you were requested to do

11  so in the Deposition Notice, isn't that correct?

12                      MR. GELB:  No, he wasn't

13  requested in the Notice.

14  BY MR. GEROLD:

15       Q.      Even though the company was requested

16  to do so in the Notice, isn't that right, sir?

17       A.      Yes.

18       Q.      Now what divisions or business

19  segments or groups within the Integrated Systems

20  Group were involved in your inquiries in response

21  to today's deposition as a Designated

22  Representative of L-3?

23       A.      Vertex, JOG, which is our Joint

24  Operations Group in Kentucky, Crestview, Waco,

25  which are all part of the AM&M Business Segment.

Page 66

1    you're under oath.  Do you understand that?

2       A.    Yes.

3       Q.    Now did you speak to any other

4    business segment other than the Vertex, JOG,

5    Crestview, or Waco Business Segment in responding

6    to the Deposition Subpoenas and Notices for today?

7       A.    None other than what's in my

8    affidavit.

9       Q.    Okay.  Well, is there any other

10   business segment that's described in your

11   affidavit, other than JOG, Vertex, Crestview, and

12   Waco, sir?

13      A.    No.

14      Q.    All right.  That wasn't too hard, was

15   it?

16                MR. GELB:  Now that's not -- a

17   snarky comment isn't really appropriate, is it?

18                MR. GEROLD:  I'm glad you said

19   that, Counsel.  I'll remember that.  "Snarky."

20   Thank you.

21                MR. GELB:  It's a good Texas

22   word.

23   BY MR. GEROLD:

24      Q.    To your knowledge, has any other

25   business segment or division of L-3 other than

1   Vertex, JOG, Crestview, and Waco ever utilized

2   aircraft maintenance, modification, and/or

3   tracking software or computer programs?

4        A.     I don't know.

5        Q.     Now you talked about the AM&M

6   division.

7               Is that a separate division or is

8   that a business segment?

9        A.     Business segment.

10        Q.     And what's the difference between a

11   division at L-3 and a business segment, to your

12   understanding?

13        A.     To my understanding, AM&M is a

14   financial segment of the L-3 Corporation.

15        Q.     Is there any other financial segment

16   of L-3 that has any involvement with aircraft

17   maintenance, modification, and/or tracking

18   software or computer programs?

19        A.     I do not know.

20        Q.     Now what company do you work for?

21        A.     L-3.

22        Q.     Okay.  What group of L-3 -- under

23   what group of L-3 does your present job fall?

24        A.     Under the Mission Integratation, MID.

25        Q.     Other than the Mission Integration

1        Q.      Do you recall their names today?

2        A.      Wes Wood.

3        Q.      First name?

4        A.      Wes, W-E-S, Wood.  I believe

5    that's -- it may be an abbreviation for Wesley.

6    I'm not sure.  Jack Hughes.  Those are the only

7    two names I remember at this time.

8        Q.      Were you ever dissatisfied with them?

9        A.      Yes.

10       Q.      Why?

11       A.      It was very poor software.  It was

12   out of date.

13       Q.      Now did you bring with you today

14   documents identifying and substantiating the

15   purchase, creation, use, and implementation of the

16   aircraft maintenance, modification, and/or

17   tracking software or computer programs for the

18   four divisions we've discussed and for the

19   Greenville location?

20       A.      Did I bring -- I'm sorry, what?  Read

21   that again.

22              (Previous record read.)

23              MR. GELB:  I think this

24   question has been asked and answered repeatedly.

25   He's told you about the locations as to which he

1    did his search, and you've inquired extensively

2    into those five, I believe.

3              To the extent of documentation

4    relating to the creation of M3, we have produced

5    thousands of pieces of paper, and you will find

6    them on Exhibit 21, and in your client's offices

7    or their lawyers's offices, having been produced

8    some time ago.

9    BY MR. GEROLD:

10        Q.    Can you answer my question, please.

11        A.    I have all the listed information

12   here in the exhibits that -- on this affidavit, I

13   guess it's deposition Exhibit 13, which we've gone

14   over.

15        Q.    Did you bring any documents

16   reflecting the purchase of software?

17        A.    The documents here in I guess Exhibit

18   21 show where we purchased the software and the

19   amounts that were paid.

20        Q.    Does that reflect the date and amount

21   of purchase for the software programs such as

22   WECMS, BDM, Maximo, Pentagon, Gold, STAMOS, CAMS,

23   REMIS?

24        A.    No.

25        Q.    Okay.  Why didn't you bring those

Page 108

1    with you today?

2         A.     I don't know.

3         Q.     Why is it that the aircraft

4    maintenance, modification, and tracking software

5    that was used at the Vertex Joint Operations

6    Group, Waco, and Crestview Divisions, was not used

7    at the Greenville location here?

8         A.     I don't know.

9         Q.     When the issue of this M3 program

10   developed and came up, did anyone say, "Hey, we

11   have these other facilities that have used this

12   aircraft maintenance tracking software.  Why don't

13   we just use that?"

14              Was there any such discussion to your

15   recollection?

16        A.     There were some discussions.  We

17   talked about buying commercial software, but

18   because we have enough resources here, we decided

19   to create our own, and the customer funded that.

20        Q.     Was that creation in response to a

21   contract with the customer?

22        A.     We have an E-31 contract that funded

23   that, yes.  And that's in the documents on Exhibit

24   21.

25              (Deposition Exhibit No. 15 marked.)

1          A.      Maintenance is performed at

2    Greenville; maintenance is performed at Vertex,

3    and at Waco, and at JOG.

4          Q.      And we talked previously about the

5    maintenance, modification, and tracking software.

6               Do you remember those questions about

7    the divisions using the various forms of software?

8          A.      Yes.

9          Q.      Can you tell me the inception date of

10   the use of those particular tracking programs?

11               MR. GELB:   Object to form.

12         A.      In my affidavit, I guess Deposition

13   Exhibit 13, on Page 3, Paragraph 8, it talks about

14   where Vertex has used BDM and WECMS for

15   approximately ten years.

16               They created those, been used there

17   for ten years, and as far as the date of inception

18   for the other ones, I do not know for the date of

19   those other softwares listed in Paragraph 8.

20   BY MR. GEROLD:

21         Q.      You were asked to bring here today

22   documents that reflected the purchase and

23   implementation of the aircraft maintenance,

24   modification, and tracking software.

25               Did you bring those documents here?

1        A.      I brought the documents on the -- I

2    believe it's Exhibit 21, which show where we got a

3    contract with the Government to produce M3.

4        Q.      Sir, my -- my question was not about

5    M3.  My question was about all the aircraft

6    maintenance and tracking software that was part of

7    the Deposition Subpoena.

8                Did you bring those documents?

9        A.      I did not.

10       Q.      Okay.  Why not?

11       A.      I was advised by counsel which

12   documents to provide.

13       Q.      Do you have on these premises the

14   contracts or licenses and any renewals thereof for

15   the aircraft maintenance, modification, and

16   tracking software that is described for each of

17   the divisions in your affidavit marked as Exhibit

18   No. 13?

19                MR. GELB:  Object to the form.

20       A.      I only have the information for the

21   one here in Greenville.

22   BY MR. GEROLD:

23       Q.      I'm sorry.  Say that again.

24       A.      I only have the information for the

25   one here in Greenville.

1        Q.     And which one is that?

2        A.     That would be M3.

3                     MR. GEROLD:   Counsel, I would

4    request on the record the contracts, licenses,

5    purchase agreements for the aircraft maintenance,

6    modifications, and tracking software and computer

7    programs that were called for in the Deposition

8    Notice and the successive licenses thereof.

9                     MR. GELB:   I would note the

10   late and possibly inappropriate issuance of the

11   Deposition Notice, which made it virtually

12   impossible to get all the things that were asked

13   for here, in addition to the fact that there are

14   no issues in this case that I can ascertain

15   about -- to which dates of other people's software

16   inceptions would be of any interest.

17                     So perhaps if ASI thought to issue a

18   Deposition Notice that was seasonable and

19   reasonable, maybe you would have had some more

20   response.   I think we would have objected to those

21   issues, in any event.

22   BY MR. GEROLD:

23       Q.     When you spoke with Mr. Briggs, did

24   you ask him about the purchase of the software --

25   tracking software that was used at the Vertex and

1    Joint Operating Group divisions?

2          A.    No.

3          Q.    Why not?

4          A.    I don't know.

5          Q.    Were there other locations in the

6    last ten years where L-3 has engaged in aircraft

7    maintenance tracking other than Greenville,

8    Vertex, the Joint Operating Group in Kentucky,

9    Waco, and Crestview?

10         A.    I don't know.

11         Q.    We had touched base on Exhibit 15 to

12   your deposition, and specifically, the first page

13   of the Basic Ordering Agreement.

14               Do you recall looking at that

15   earlier?

16         A.    Yes.

17         Q.    And I had asked you some questions

18   about the location of the Sections C, F, I, and J

19   that were referenced on Page L3IS-MA2 03130A of

20   that exhibit.  Is that correct?

21         A.    Yes.

22         Q.    Or of that --

23         A.    Yes.

24         Q.    Okay.  Now are you telling us that

25   those contents are not here in Greenville?

1      A.      I do not know.

2      Q.      Okay.  Do you know whether or not L-3

3  has a copy of those items at any of its

4  facilities, "those items" being sections C, F, I,

5  and J of the Basic Ordering Agreement contained as

6  page -- or marked as L3IS-MA2 03130A of Exhibit 15

7  to your deposition?

8      A.      No.  These were provided by the

9  Government.

10                  MR. GEROLD:  Objection.

11  Nonresponsive.  Can you read the question back,

12  please.

13                  (Previous record read.)

14  BY MR. GEROLD:

15      Q.      I didn't ask you who provided those.

16  I was asking you if they were at any of the L-3

17  facilities anywhere.  Do you know?

18      A.      Well, you asked me if they were in

19  the Waco and the JOG and L-3 facility here, and I

20  said, "No."  I also said these documents were

21  provided by the Government.

22      Q.      Are they at any other L-3 facilities?

23      A.      I do not know.

24                  MR. GEROLD:  I would formally

25  request those, as well, Counsel.

1          Q.      Were there any other locations other

2     than the Greenville location, Vertex, JOG, Waco,

3     and Crestview that utilized maintenance tracking

4     software in the years that you've been with L-3?

5          A.      Have they utilized software?

6          Q.      Aircraft maintenance tracking

7     software.

8          A.      Which I said in here, (indicating),

9     some of these for ten years at Vertex.

10         Q.      Any other locations, sir?  I'm not

11    talking about Vertex.

12         A.      I don't know.

13         Q.      You don't know.  And you've never

14    made an effort to figure out if that was the case;

15    is that correct?

16         A.      I made an effort to determine what

17    AM&M companies used.

18         Q.      All right.  Are the AM&M companies --

19    are there other companies within L-3 that do or

20    have done aircraft maintenance, modification, and

21    tracking?

22         A.      Yes.

23                  MR. GELB:  Asked and answered

24    many times.

25    BY MR. GEROLD:

1          Q.      But you didn't inquire as to their

2    history and their current usage, correct?

3          A.      Well, yes, I did.  Here at C3ISR, we

4    have maintenance, and I do inquire.

5          Q.      Outside of C3ISR, you did not make

6    that inquiry within L-3; is that correct?

7          A.      Yes.  Here at Greenville, L-3, yes.

8    L-3 -- not -- L-3 Greenville is where I made my

9    inquiry, --

10         Q.      Okay.  But you didn't do anything --

11         A.      -- and C3ISR.

12         Q.      But you didn't make your inquiries

13   for purposes of your 30(b)(6) deposition outside

14   of L-3 Greenville, isn't that correct?

15         A.      No.  I also went through Vertex and

16   through AM&M Business Segment to find out.

17         Q.      Other than Greenville, Vertex, and

18   Waco, you didn't go outside those segments to

19   determine whether --

20                 MR. GELB:  Asked and answered.

21   Please finish.

22         A.      I went to JOG, and I went to

23   Crestview, to all the ones that were stated in

24   here, (indicating).

25                 MR. GELB:  "In here,"

1   (indicating), you're referring to Exhibit 13?

2                    THE WITNESS:   That's correct.

3   BY MR. GEROLD:

4        Q.     Exhibit 13?

5        A.     That's correct.

6        Q.     And outside of Greenville, Vertex,

7   JOG, Waco, and Crestview, you did not make any

8   inquiry as to use of the aircraft maintenance

9   tracking software within any other group,

10  division, or segment of L-3; is that correct?

11       A.     Correct.

12       Q.     Now when the M3 -- you talked a

13  little bit about the -- the E-31.

14       A.     Yes, sir.

15       Q.     Did -- maybe I misunderstood.   You

16  said that was something different than the basic

17  operating agreement -- excuse me, Basic Ordering

18  Agreement that's referenced in Exhibit 15 to your

19  deposition?

20       A.     That is a portion of the Basic

21  Ordering Agreement.   It is one of the subsets

22  under the BOA.

23       Q.     So was the BOA one of the first

24  documents, and then other projects came off of

25  that?