UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AIRFRAME SYSTEMS, INC. f/k/a
AIRLINE SOFTWARE, INC.,

        Plaintiff,

v.

RAYTHEON COMPANY,
and
L-3 COMMUNICATIONS CORPORATION,

        Defendants.

Case No. 1:08-cv-11940-WGY

**L-3'S RESPONSE TO
AIRFRAME'S "STATEMENT OF UNDISPUTED FACTS" IN SUPPORT OF
ITS STRICKEN MOTION FOR SUMMARY JUDGMENT**

Plaintiff Airframe Systems, Inc. ("Airframe") filed an untimely motion for summary

judgment (D.I. 88) that has been stricken by the Court.  (6/8/10 Order.)  Airframe included a

"statement of undisputed facts" in its combined memorandum in support of its now-stricken

motion and in opposition to L-3's motion for summary judgment (D.I. 89), but failed to respond

to any of the undisputed material facts set out in L-3's papers (D.I. 85).  Because Airframe's

"undisputed facts" appear to only have been submitted in support of its stricken motion,

Airframe's submission should be of no effect.  In order to provide the Court with a complete

record, Defendant L-3 Communications Corp. ("L-3") hereby responds to Airframe's statement,

noting, however, that Airframe provided no counterstatement to L-3's statement of facts.

       **Statement 1:  Airframe Systems, Inc. (Airframe) is a maker of aircraft maintenance
software (ARMS) that is protected by continuing copyright registrations. Complaint ¶¶ 74-
75.**

      **<u>Response:</u>** L-3 denies that the ARMS software is protected by "continuing copyright

registrations."  Pursuant to the Court's Order of May 13, 2010, Airframe is deemed to have

admitted that it did not possess a copy of the source code it was seeking to register at the time registration was sought and thus all of its registrations are invalid, depriving this Court of jurisdiction over this dispute.  Further, the record is undisputed that Airframe is a mere nonexclusive licensee.  (*See* D.I. 62.)  Under black letter law, Airframe thus has no standing to assert these registrations.  (*Id.*)  Because Airframe has no standing under Copyright Law, this alleged fact is not material.

**Statement 2:  Airframe licensed its PC-version of ARMS to a predecessor of Raytheon Company (Raytheon) in 1986 that was been continuously renewed by Raytheon and L-3 until May 2006. Complaint ¶¶ 11-19, 33-43.**

**Response:**  L-3 does not deny this statement.

**Statement 3:  Neither L-3 nor Raytheon had any license to the Airframe source code for any purpose.  See Certification of Gordon Rosen dated January 20, 2006 at ¶ 16, annexed as Exhibit A to Certification of Alan Gelb, September 29, 2008**

**Response:**  L-3 does not deny that Airframe's license did not cover source code; however, this fact is not material because the small number of source code files left by Mr. Stolarz on a Raytheon computer were never used for any purpose and indeed were deleted immediately when they were discovered.  (D.I. 83 Exs. 8 at ¶ 7-9, Ex. 9.)

**Statement 4:  L-3 contends that a former employee of Airframe, John Stolarz, installed the source code on L-3's computer. Complaint ¶ 52.**

**Response:** L-3 denies this statement.  Airframe's complaint is not a valid source of evidence, but merely a recitation of Airframe's allegations that it must prove in this case. Further, L-3 denies that it ever contended that John Stolarz installed any source code on L-3's computer.  As the First Circuit found, John Stolarz did install source code on a computer owned by Raytheon Company.  *Airframe Systems, Inc. v. Raytheon Co.*, 601 F.3d 9, 12 (1st Cir. 2010).

**Statement 5:  Stolarz had no authority to give the source code to L-3 or Raytheon which had not purchased it or obtained a license to it. Complaint ¶¶ 56, 59-63; Rosen Certification, Exhibit A to Gelb Certification, at ¶¶ 26-28.**

<u>Response:</u>  L-3 denies this statement.  According to Airframe's own complaint, Mr. Stolarz was an employee and representative of Airframe, (D.I. 83 Ex. 3 ¶ 6) and thus had apparent authority to take any and all actions to correct the problems with the ARMS software. Airframe has offered to evidence to suggest Mr. Stolarz did not have at least apparent authority to perform the tasks he performed.  Moreover, Airframe's citation to its own complaint is improper, as the complaint is not evidence but merely a recitation of the allegations it is required to prove.

**Statement 6:  The use of the AS400 software derived from Airframe's source code violated Airframe's copyrights. Complaint ¶¶ 57-63, 66, 77, 80, 81, 88; Rosen Certification at ¶ 5.**

<u>Response:</u>  L-3 denies this statement.  This statement is not a fact but a legal conclusion. Further, L-3 did not use the software on an AS400 computer, as Airframe conceded in its briefing to the First Circuit.  *Airframe v. Raytheon*, No. 09-1624 8/13/09 Appellant Brief (1st Cir. 2009)  Moreover, this statement is not material because it concerns events pre-dating the April 9, 2009 cut-off date ordered by the Court in its July 23, 2009 Order.

**Statement 7:  L-3 used the ARMS source code to gain development time and product stability that was not available through the development of software from the ground up in the PHP language.  Declaration of Gordon S. Rosen in Opposition to L-3's Motion for Summary Judgment and in Support of Airframe's Cross Motion for Summary Judgment (June 7, 2010) ("Rosen Aff.") ¶¶ 10-11, 21, 22.**

<u>Response:</u>  L-3 denies this statement.  The undisputed evidence shows that tnhe source code left on the Raytheon computer was destroyed in August 2003.  (D.I. 83 Exs. 8 at ¶ 7-9, Ex. 9.)  There is absolutely no evidence to support this conclusory assertion.  Moreover, Brett Pelham, the M3 developer, testified in detail regarding the M3 development process, see D.I. 83 Ex. 13.  In particular, he testified that he wrote the M3 code himself.  (D.I. 83 Ex. 13 at 66:14-16.)

**Statement 8:  The ARMS ZFLSQWK file was copied by L-3. Rosen Aff. ¶¶ 16, 18.**

**Response:**  L-3 denies this statement, which is unsupported by any record evidence.  The only source code to which L-3 had access was destroyed in August 2003.  (D.I. 83 Exs. 8 at ¶ 7-9, Ex. 9.)  That source code consisted of 71 files, which did not include any file named ZFLSQWK.  (D.I. Ex. 83 Ex. 9).  Furthermore, development of M3 did not begin until January of 2004, long after the source code was destroyed.  (Ex. 1 at 58-60).  There is no evidence that any of ARMS code was copied by L-3.  (D.I. 84 ¶¶ 10-12.)

**Statement 9:  The ARMS SQRDAT data element was copied by L-3. Rosen Aff. ¶¶ 17, 18.**

**Response:**  L-3 denies this statement.   The only source code to which L-3 had access was destroyed in August 2003.  (D.I. 83 Ex. 8 ¶¶ 8-9).  The source code consisted of 71 files, which did not include any file named SQRDAT.  (D.I. 83 Ex. 9)  Furthermore, development of M3 did not begin until January of 2004, long after the source code was destroyed.  (Ex. 1 at 58-60.)  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)

**Statement 10:  The ARMS sq_flight_num and sq_ata data elements were copied by L-3. Rosen Aff. ¶ 20.**

**Response:**  L-3 denies this statement.  The only source code to which L-3 had access was destroyed in August 2003.  (D.I. 83 Ex. 8 ¶¶ 8-9)  Development of M3 did not begin until January of 2004, long after the source code was destroyed.  (Ex. 1 at 58-60.)  There is no evidence that any of the ARMS code was copied by L-3.  (D.I. 84 ¶¶ 10-12.)  Further, this fact is not material because short titles or labels such "sq_flight_num" and "sq_ata" are not protected by copyright under black letter law.  *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1519 (1st Cir. 1996).

**Statement 11:  L-3 copied between 580 and 600 files from the ARMS source code. Rosen Aff. ¶¶ 21, 22, 58.**

**Response:**  L-3 denies this statement.  There is no evidentiary basis for this assertion.  Mr. Rosen assumes that between 580 and 600 files were left on the Raytheon computer by Mr.

Stolarz and that L-3 copied each and every one of them.  In fact, there is no evidence of copying, and Mr. Stolarz left only 71 files on the computer.  (D.I. 84 ¶¶ 10-12; D.I. 83 Ex. 8 ¶ 8 and Ex. B).  The only source code to which L-3 had access was destroyed in August 2003.  (D.I. 83 Ex. 8 ¶¶ 8-9).  Development of M3 did not begin until January of 2004, long after the source code was destroyed.  (EX. 1 at 58-60).

**Statement 12:  L-3's M3 program contains "create" and "modify" dates prior to 2004, when L-3 said it began developing M3, indicating that M3 was taken from an earlier source code. Rosen Aff. ¶¶ 24.**

**Response:**  L-3 denies that the M3 program contains "create" and "modify" dates prior to 2004.  All of the dates on the files Mr. Rosen describes have "create" and "modify" dates of either November 25, 2008 or December 1, 2008. (Reply Declaration of Adam J. Kessel Ex. 5.)

**Statement 13:  The only other source code L-3 admits to having access to is the ARMS source code and it was the ARMS source code that L-3 accessed in creating M3. Rosen Aff. ¶ 25.**

**Response:**  L-3 denies this statement.  Airframe incorrectly asserts that the ARMS source code was used in the creation of M3.  The only source code to which L-3 had access was destroyed in August 2003.  (D.I. 83 Ex. 8 ¶¶ 8-9).  Development of M3 did not begin until January of 2004, long after the source code was destroyed.  (EX. 1 at 58-60).  Mr. Pelham, the M3 developer, testified in detail regarding the M3 development process, see D.I. 83 Ex. 13.  In particular, he testified that he wrote the M3 code himself without access to ARMS.  (D.I. 83 Ex. 13 at 66:14-16.)  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12).

**Statement 14:  Screens from M3 match the ARMS screens and are identical. Rosen Aff. ¶ 28.**

**Response:**  L-3 denies this statement.  M3 was developed using an iterative development process (D.I. 83 Ex. 13 at 67-68).  Mr. Pelham had no access to the ARMS source code (EX. 1 at 106-107).  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12).  This statement is also not material because it is

irrelevant to the only infringement theory articulated by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.

**Statement 15:  L-3 admits that it copied and uploaded the ARMS screens and report formats into the M3 program. Rosen Aff. ¶ 31.**

**Response:**  L-3 denies this statement.  Mr. Pelham testified that he was given printed reports from the ARMS system, and those printed reports were used in the creation of the M3 software.  Mr. Pelham testified that the report formats were used to demonstrate the data that needed to be maintained.  (D.I. 83 Ex. 13 at 89-92.)  The only material that was "uploaded" into M3 was L-3's government customer's historical aircraft maintenance data, which is neither the property of Airframe nor protected by copyright law.  *Feist Publications v. Rural Tel. Serv. Co.*, 499 U.S. 340, 341 (1991).  This statement is also not material because it is irrelevant to the only infringement theory articulated by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.

**Statement 16:  Brett Pelham included comments in M3 that demonstrate he had access to the ARMS source code. Rosen Aff. ¶ 31.**

Response: L-3 denies this statement.  During his deposition, Mr. Pelham explained in detail the significance of the comment in question, namely that some of the historical aircraft maintenance data exported from ARMS did not appear to have any purpose in M3, so it was not used in the new system.  (EX. 1 at 295-296.)  Morever, Mr. Pelham did not have access to the ARMS source code.  (EX. 1 at 106-107.)

**Statement 17:  Lines 1094-1284 of the M3 code is a copy of the ARMS program ZIS010. Rosen Aff. ¶ 34.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It

is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

This statement is simply unsupported by the cited source code. A side-by-side comparison of lines 1094-1284 of the 2008 version of M3 with the "ZIS010" source code shows they are not similar. Indeed, PHP and RPG code are entirely different in syntax and coding conventions (see, e.g., D.I. 84 ¶¶ 6-7 and Ex. 1), and thus it is in fact not possible for one to be a "copy" of the other. Because the ARMS and M3 source code are both highly confidential, attorneys' eyes only material, they have not been filed on the docket, but L-3 is willing to provide these materials if necessary for *in camera* review by the Court.

**Statement 18:  M3 copies the ARMS hypenated [*sic*] "RE-SET" file. Rosen Aff. ¶ 34.**

**<u>Response:</u>**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12).  This statement is also not material because it is irrelevant to the only infringement theory articulated by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  Moreover, this statement is also not material because short phrases and labels are not subject to copyright protection.  *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1519 (1st Cir. 1996).

**Statement 19:  M3 copies the ARMS "ONE-TIME" field name. Rosen Aff. ¶ 35.**

**<u>Response:</u>**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12).  This statement is also not material because it is irrelevant to the only infringement theory articulated by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  Moreover, this statement is also not material because short phrases and labels are not subject to copyright protection.  *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1519 (1st Cir. 1996).

**Statement 20:  M3 copies the ARMS "INCLUDE ON TASK CARD TIE IN"
function. Rosen Aff. ¶ 36.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code
was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12).  This
statement is also not material because it is irrelevant to the only infringement theory articulated
by Airframe in the contention interrogatory response to which it is limited by the Court's May
13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court
Orders and the Federal Rules.  Moreover, this statement is also not material because short
phrases and labels are not subject to copyright protection.  *CMM Cable Rep, Inc. v. Ocean Coast
Properties, Inc.*, 97 F.3d 1504, 1519 (1st Cir. 1996).

**Statement 21:  M3 copies the ARMS "PN (IF PN BASED)" function and the ARMS
"Perform every", "early window", "late window", "Repeat every" sequence and followed
by the ARMS three columns structure for "Hours Cycles Days". Rosen Aff. ¶ 37.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code
was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12).  This
statement is also not material because it is irrelevant to the only infringement theory articulated
by Airframe in the contention interrogatory response to which it is limited by the Court's May
13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court
Orders and the Federal Rules.  Moreover, this statement is also not material because short
phrases and labels are not subject to copyright protection.  *CMM Cable Rep, Inc. v. Ocean Coast
Properties, Inc.*, 97 F.3d 1504, 1519 (1st Cir. 1996).  Finally, this statement is not material
because it relates to a similarity of function dictated by the real world FAA and data set
requirements.  Functional material is not protected by copyright.  *Id*. at 1518.

**Statement 22:  M3 code lines 1163 to 1164 contain the statement "cannot determine
use for capability in to not reset," indicating that the M3 designer used other source code
that he did not understand. Rosen Aff. ¶ 38.**

**Response:** L-3 denies this statement.  No M3 code contains the statement "cannot
determine use for capability in to not reset."  Mr. Rosen's recollection of this phrase is
unsupported by the record.  The comment in question in fact states "note- reset to zero is always
set to Yes - could not be determined a use for capability(in M3)to NOT reset so turned off thru

out system." Because the ARMS and M3 source code are both highly confidential, attorneys' eyes only material, they have not been filed on the docket, but L-3 is willing to provide these materials if necessary for *in camera* review by the Court.

Mr. Pelham explained at his deposition why he wrote this note in the source code: "[U]pon converting the data in from the reports there was data in there that was not used, the nature of the, of the data was to perform the function or not and we had no use for performing that function or not on the historical data nor on any new data, so we don't, the note was about not using that kind of a function at all on the historical data."   (EX. 1 at 297.)  In other words, some of the historical aircraft maintenance data exported from ARMS did not appear to have any purpose in M3, so it was not used in the new system.  (EX. 1 at 297.)  Morever, Mr. Pelham did not have access to the ARMS source code.   (EX. 1 at 106-107.)

**Statement 23:  At M3 code lines 1549-1613 appears the INSPECTION RE-SET function that is almost exact copy of ZIS080, the ARMS INSPECTION RE-SET function. Rosen Aff. ¶ 39.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

This statement is simply unsupported by the cited evidence.   A side-by-side comparison of lines 1594-1613 of the 2008 version of M3 with the "ZIS080" source code shows they are not similar.  Indeed, PHP and RPG code are entirely different in syntax and coding conventions (see, e.g., D.I. 84 ¶¶ 6-7 and Ex. 1), and thus it is in fact not possible for one to be an "almost exact copy" of the other.  Because the ARMS and M3 source code are both highly confidential, attorneys' eyes only material, they have not been filed on the docket, but L-3 is willing to provide these materials if necessary for *in camera* review by the Court.

**Statement 24:  At M3 code lines 167-175 appeared the "Kit_Browser.php" module containing the sequence "BASIC PART, ASSEMBLY, SUB-ASSSEMBLY [sic], ENGINE,**

**KIT PART" the exact duplicate of the same sequence in ARMS and which is unique to ARMS. Rosen Aff. ¶ 40.**

**Response:**   L-3 denies this statement.  As far as L-3 can tell, this statement includes a typographical error "SUB-ASSSEMBLY" should read "SUB-ASSEMBLY."  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

This statement is simply unsupported by the cited evidence.   A side-by-side comparison of lines 167-175 of the 2008 version of the "Kit_Browser.PHP" file in M3 with any ARMS source code (no ARMS source code is specifically identified here) would show they are not similar.  Indeed, PHP and RPG code are entirely different in syntax and coding conventions (see, e.g., D.I. 84 ¶¶ 6-7 and Ex. 1), and thus it is in fact not possible for one to be an "almost exact copy" of the other.  Because the ARMS and M3 source code are both highly confidential, attorneys' eyes only material, they have not been filed on the docket, but L-3 is willing to provide these materials if necessary for *in camera* review by the Court.

There is also no admissible evidence which supports any assertion of industry standard terms.  Mr. Rosen has not established any foundation which qualifies him as an expert with knowledge of industry standard terms.  Further this statement is not material because short titles are not protected by copyright.  *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1519 (1st Cir. 1996).

Finally, this statement is not material because it relates to functional elements of software not protected by copyright law.  *Id.* at 1518.

**Statement 25:  Lines 1549-1558 of the M3 code shows schemas that are lifted from the ARMS file: ZFLACTYI.RPG, ZFLINPC.RPG and ZFLACTYR.RPG. Rosen Aff. ¶ 41.**

**Response:**

L-3 denies this statement. This statement is not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court

Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

This statement is simply unsupported by the cited evidence.   A side-by-side comparison of M3 code (no particular file is identified) with the three ARMS source code files named would show they are not similar.  Indeed, PHP and RPG code are entirely different in syntax and coding conventions (see, e.g., D.I. 84 ¶¶ 6-7 and Ex. 1), and thus it is in fact not possible for one to be an "almost exact copy" of the other.  Because the ARMS and M3 source code are both highly confidential, attorneys' eyes only material, they have not been filed on the docket, but L-3 is willing to provide these materials if necessary for *in camera* review by the Court.


**Statement 26:  M3 lines 584-826 are in the module inspection_forms.php that is an exact copy of the ARMS program ZIS090. Rosen Aff. ¶ 42.**

**<u>Response:</u>** L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

This statement is simply unsupported by the cited evidence.   A side-by-side comparison of lines 584-826 of the 2008 version of M3 file "inspection_forms.php" with the "ZIS090" ARMS source code shows they are not similar.  Indeed, PHP and RPG code are entirely different in syntax and coding conventions (see, e.g., D.I. 84 ¶¶ 6-7 and Ex. 1), and thus it is in fact impossible for one to be an "exact copy" of the other.  Because the ARMS and M3 source code are both highly confidential, attorneys' eyes only material, they have not been filed on the docket, but L-3 is willing to provide these materials if necessary for *in camera* review by the Court.


**Statement 27:  Lines 4161-4171 of the M3 address the use of the table of Receipt Codes that is an exact copy of the ARMS list using the ARMS sequence in identical order with identical numbers attached. Rosen Aff. ¶ 43.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

This statement is simply unsupported by the cited evidence.   A side-by-side comparison of M3 source code (no file is identified) with ARMS source code (no file is identified) would show they are not similar.  Indeed, PHP and RPG code are entirely different in syntax and coding conventions (see, e.g., D.I. 84 ¶¶ 6-7 and Ex. 1), and thus it is in fact impossible for one to be an "exact copy" of the other.  Because the ARMS and M3 source code are both highly confidential, attorneys' eyes only material, they have not been filed on the docket, but L-3 is willing to provide these materials if necessary for *in camera* review by the Court.

Finally, this statement is not material because the use of codes to identify events is not protectable expression under copyright law.  It is merely a functional parallel between ARMS and M3 resulting from the undisputed fact that L-3 exported its government customer's aircraft maintenance data from ARMS and imported it into M3.  *CMM Cable Rep, Inc*., 97 F.3d at 1518.

**Statement 28:  Lines 4291-4358 of M3 code referencing the INQUIRE TIME APPLIED TO AIRCRAFT function are an exact copy of the ARMS equivalent ZRT060 including the same code and sequence. Rosen Aff. ¶ 43.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

This statement is simply unsupported by the cited evidence.   A side-by-side comparison of M3 source code (no file is identified ) with the ARMS source code "ZRT060" would show they are not similar.  Indeed, PHP and RPG code are entirely different in syntax and coding

conventions (see, e.g., D.I. 84 ¶¶ 6-7 and Ex. 1), and thus it is in fact impossible for one to be an "exact copy" of the other.  Because the ARMS and M3 source code are both highly confidential, attorneys' eyes only material, they have not been filed on the docket, but L-3 is willing to provide these materials if necessary for *in camera* review by the Court.

**Statement 29:  M3 code lines 3559-3632 and 3639-3668 that define the table schema for the serial and part masters are identical to the ARMS files of ZFLRSC1.RPG and ZFLRSC0.RPG. Rosen Aff. ¶ 44.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

This statement is simply unsupported by the cited evidence.   A side-by-side comparison of M3 source code (no file is identified) with ARMS source code ZFLRSC1.RPG and ZFLRSC0.RPG would show they are not similar.  Indeed, PHP and RPG code are entirely different in syntax and coding conventions (see, e.g., D.I. 84 ¶¶ 6-7 and Ex. 1), and thus it is in fact impossible for one to be "identical" to the other.  Because the ARMS and M3 source code are both highly confidential, attorneys' eyes only material, they have not been filed on the docket, but L-3 is willing to provide these materials if necessary for *in camera* review by the Court.

Finally, this statement is not material because the identification of part numbers is not protectable expression under copyright law.  It is merely a functional parallel between ARMS and M3 resulting from the undisputed fact that L-3 exported its government customer's aircraft maintenance data from ARMS and imported it into M3.  *CMM Cable Rep, Inc.*, 97 F.3d at 1518.

**Statement 30:  M3 code lines 3798-3802 define the list of part status codes for "IN STOCK, ON AIRCRAFT, IN SUSPENSE, etc"; this was a list created for the ARMS program and the M3 version uses code letters as used by ARMS: I for IN STOCK, P for ON AIRCRAFT, S for IN SUSPENSE or QUARANTINE, etc. Rosen Aff. ¶ 44.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

This statement is simply unsupported by the cited evidence.   A side-by-side comparison of M3 source code (no file is identified) with ARMS source code (no file is identified) would show they are not similar.  Indeed, PHP and RPG code are entirely different in syntax and coding conventions (see, e.g., D.I. 84 ¶¶ 6-7 and Ex. 1), and thus it is in fact impossible for one to be "identical" to the other.  Because the ARMS and M3 source code are both highly confidential, attorneys' eyes only material, they have not been filed on the docket, but L-3 is willing to provide these materials if necessary for *in camera* review by the Court.

Finally, this statement is not material because the use of specific "code letters" to represent the status of parts is not protectable expression under copyright law.  It is merely a functional parallel between ARMS and M3 resulting from the undisputed fact that L-3 exported its government customer's aircraft maintenance data from ARMS and imported it into M3. *CMM Cable Rep, Inc*., 97 F.3d at 1518.


**Statement 31:  Lines 1096-1314 of the M3 code define the ROTABLE PART MASTER screen that is the exact copy of the ARMS programs ZRT020. Rosen Aff. ¶ 46.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

This statement is simply unsupported by the cited evidence.   A side-by-side comparison of M3 source code (no file is identified) with the ARMS source code for the file "ZRT020"

would show they are not similar.  Indeed, PHP and RPG code are entirely different in syntax and coding conventions (see, e.g., D.I. 84 ¶¶ 6-7 and Ex. 1), and thus it is in fact impossible for one to be "identical" to the other.  Because the ARMS and M3 source code are both highly confidential, attorneys' eyes only material, they have not been filed on the docket, but L-3 is willing to provide these materials if necessary for *in camera* review by the Court.

**Statement 32:  M3 schema for the inspection data come from the ARMS file ZFLACTYI.RPG. Rosen Aff. ¶ 47.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

Finally, this statement is not material it relates to a functional parallel between ARMS and M3 resulting from the undisputed fact that L-3 exported its government customer's aircraft maintenance data from ARMS and imported it into M3.  This data is not protected by copyright. *CMM Cable Rep, Inc*., 97 F.3d at 1518.

**Statement 33:  Menu entries such as "Batch, Keyword, Part # Search, and Rotable Chain List" are unique to ARMS and appear in M3. Rosen Aff. ¶ 49.**

**Response:**  L-3 denies this statement.  There is no admissible evidence to support the contention that "Batch, Keyword, Part # Search, and Rotable Chain List" are unique to ARMS. Mr. Rosen has not established any foundation which qualifies him as an expert with knowledge of industry standard terms.  Mr. Rosen has not established any foundation which qualifies him as an expert with knowledge of industry standard terms.  Further, the statement is not material because short titles are not protected by copyright.  This statement is also not material because it is irrelevant to the only infringement theory articulated by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.

**Statement 34:  M3 uses the same six-character menu/file names as ARMS even though the PHP language in which M3 is written does not have a six-character limitation, as does the ARMS RPG-II language. Rosen Aff. ¶ 49.**

**Response:**  L-3 denies this statement.  The "CMPCTL" menu, to which Mr. Rosen refers, is name "Component Control (CMPCTL)" in the M3 menu. Because the ARMS and M3 source code are both highly confidential, attorneys' eyes only material, they have not been filed on the docket, but L-3 is willing to provide these materials if necessary for *in camera* review by the Court.

This statement is also not material because it is irrelevant to the only infringement theory articulated by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

Further, this statement is not material because short titles such as the six-character menu/file names in question are not protected by copyright under black letter law.  *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1519 (1st Cir. 1996).


**Statement 35:  Menu CMPSUP was copied intact from ARMS to M3 but L-3 renumbered the menu item to conceal the copying. Rosen Aff. ¶ 50.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

This statement is also not material because a menu command hierarchy is not protectable expression under well-established First Circuit law.  *Lotus Development Corp. v. Borland Int'l, Inc.*, 49 F.3d 807,819 (1st Cir. 1995)  ("We hold that the Lotus menu command hierarchy is uncopyrightable subject matter").

**Statement 36:  M3 uses the ARMS menu "UPDATE KITS / ENGINES / ASSEMBLIES" even though this is usually referred in the industry as "Bill of Materials". Rosen Aff. ¶ 50.**

<u>Response:</u>  L-3 denies this statement.  There is no admissible evidence which supports any assertion of industry standard terms.  Mr. Rosen has not established any foundation which qualifies him as an expert with knowledge of industry standard terms.  Further this statement is not material because short titles are not protected by copyright and the statement is irrelevant to the only infringement theory articulated by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.

**Statement 37:  Industry uses function "K/E/A" but M3 copies the ARMS "KAE". Rosen Aff. ¶ 50.**

<u>Response:</u>  L-3 denies this statement.  There is no admissible evidence which supports any assertion of industry standard terms.  Mr. Rosen has not established any foundation which qualifies him as an expert with knowledge of industry standard terms.  Further this statement is not material because short titles are not protected and the statement is also not material because it is irrelevant to the only infringement theory articulated by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.

**Statement 38:  L-3's M3 reports or screens were uploaded and copied from the ARMS program as admitted by Brett Pelham in his deposition testimony. See Rosen Aff., Exhibit 5 at 89-92.**

<u>Response:</u>  L-3 denies this statement.  Mr. Pelham testified that he was given printed reports from the ARMS system, and those printed reports were used in the creation of the M3 software.  Mr. Pelham testified that the report formats were used to demonstrate the data that needed to be maintained.  (EX. 1 at 95-98).  This statement is also not material because it is irrelevant to the only infringement theory articulated by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.

**Statement 39:  The following M3 reports/screens are copies of the ARMS reports/screens, with the page numbers listed below corresponding to the pages of Rosen Aff., Exhibit 1: (list excluded)**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.  Finally, it is not material because Airframe has never attempted to show that any aspects of these reports and screens are expressive rather than merely functional and thus protected under copyright law.

**Statement 40:  Non-ARMS vendors use different organizational methods for reports and screens and different creative input. Rosen Aff. ¶¶ 52-57, 59, 60.**

**Response:**  L-3 denies this statement.  There is no admissible evidence which describes the organizational methods for reports, screens, and different creative inputs of Non-ARMS vendors.  None of the material cited by Mr. Rosen was ever produced in discovery in this case and thus should be precluded from evidence.  Moreover, the isolated examples Mr. Rosen provides does not establish that Airframe's presentation is unique among all vendors.  This statement is also not material because it is irrelevant to the only infringement theory articulated by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.

**Statement 41:  ARMS use of "Reference Number" referring to Squawk reports is a unique adoption that differs from the industry usage. Rosen Aff. ¶ 61a.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

Finally, this statement is unsupported by any record evidence.  There is no admissible evidence which supports any assertion of industry standard terms.  Mr. Rosen has not established any foundation which qualifies him as an expert with knowledge of industry standard terms.  Further this statement is not material because short titles and merely functional content are not protected by copyright.

**Statement 42:  M3 copies the ARMS use of "Squawk Type" report to allow the user to separate Squawks reported by cockpit crew, cabin crew, and mechanics while the aviation industry at large tracks only "Pilot Squawks". Rosen Aff. ¶ 61b.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

Finally, this statement is unsupported by any record evidence.  There is no admissible evidence which supports any assertion of industry standard terms.  Mr. Rosen has not established any foundation which qualifies him as an expert with knowledge of industry standard terms.  Further this statement is not material because short titles and merely functional content are not protected by copyright.

**Statement 43:  ARMS use of the "presentation" sequence allows the user to trace the flow of events visually, a unique creation not used by other vendors as demonstrated by the examples from LIAT that use a different function. Rosen Aff. ¶ 61c.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.  It is also based on 2008 source code that was never considered by any of the experts in this case and thus forming no part of the case record.

Finally, this statement is unsupported by any record evidence.  There is no admissible evidence which supports any assertion of industry standard terms.  Mr. Rosen has not established any foundation which qualifies him as an expert with knowledge of industry standard terms. Further this statement is not material because short titles and merely functional content are not protected by copyright.

**Statement 44:  ZMN190 and ZMN065 are fanciful terms invented by Airframe directly copied by L-3 in the M3. Rosen Aff. ¶¶ 61d, 61g.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules. Further this statement is not material because short titles such as "ZMN190" and "ZMN065" are not protected by copyright.

**Statement 45:  ARMS uniquely keeps track of the number of adjustments made to an "Apply Time" record already made while the rest of the industry keeps multiple records for each new change, a unique approach taken only by Airframe. Rosen Aff. ¶61h.**

**Response:**  L-3 denies this statement.  There is no admissible evidence which supports any assertion of any unique approach used by Airframe.  Further this statement is not material because short titles are not protected by copyright.  It is also not material because it refers only to an idea, not creative expression, and ideas are not protected under copyright law. This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.

**Statement 46:  M3 copies the ARMS These Kit reports except for the use of an underscore, i.e., "_" where ARMS uses a "greater than" symbol. Rosen Aff. ¶ 61i.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This

statement is also not material because short titles are not protected by copyright.  It is also not material because it refers only to an idea, not creative expression, and ideas are not protected under copyright law. This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.

**Statement 47:   M3 copies "Rotable Chain List" a unique term used only by ARMS. Rosen Aff. ¶ 61j.**

<u>Response:</u>  L-3 denies this statement.  There is no admissible evidence which supports any assertion of how other aircraft management systems perform.  Further this statement is not material because short titles are not protected by copyright.  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.

**Statement 48:   M3 copies ARMS segregation of Rotable Chain reports by "Hard Time" and "Condition" while the industry does not use such segregation.  Rosen Aff.  ¶ 61j.**

<u>Response:</u>  L-3 denies this statement.  There is no admissible evidence which supports any assertion of industry standard terms.  Mr.  Rosen has not established any foundation which qualifies him as an expert with knowledge of industry standard terms.  Further this statement is not material because short titles are not protected by copyright.  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.

**Statement 49:   ARMS three-level stacking system for "times" elements is a unique organizational tool used only by ARMS and copied by M3.  Rosen Aff.  ¶ 61k.**

<u>Response:</u>  L-3 denies this statement.  There is no admissible evidence which supports any assertion of how other aircraft management systems perform.  Mr.  Rosen has not established any foundation which qualifies him as an expert with knowledge of industry standard

terms.  Further this statement is not material because neither short titles nor ideas such as a "three-level stacking system" are protected by copyright.  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.

**Statement 50:  M3 copies ARMS' use of a "Days" entry column for "Apply Time" programs, a feature not used by the industry.  Rosen Aff.  ¶ 61l.**

**Response:**  L-3 denies this statement.  There is no admissible evidence which supports any assertion of how other aircraft management systems perform.  Mr. Rosen has not established any foundation which qualifies him as an expert with knowledge of industry standard terms.  Further this statement is not material because neither short titles nor ideas such as a "days" entry column are protected by copyright.  This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.

**Statement 51:  M3 copies the terms "Perform Every" and "Repeat Every" that are unique to ARMS which supports both inspection intervals for initial "performance" and for "repeat" intervals, a function directly copied by M3.  Rosen Aff.  ¶ 61m.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because short titles are not protected by copyright.  It is also not material because short titles such as "perform every" and "repeat every" are not protected under copyright law. This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.

**Statement 52:  M3 copied the ARMS ZIS040, ZRT045, ZRT241, ZMN125, ZMN025, ZRS384, ZRT045 reports with no substantive change.  Rosen Aff.  ¶¶ 61o, p, q, r, s, u, v and w.**

**Response:**  L-3 denies this statement.  There is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12.)  This statement is also not material because short titles are not protected by copyright.  This statement is also not material because Airframe has never attempted to show that any aspects of these reports are expressive rather than merely functional and thus protected under copyright law.

This statement is also not material because it was not disclosed by Airframe in the contention interrogatory response to which it is limited by the Court's May 13, 2010 Order.  It is also based solely on improper expert testimony in violation of many Court Orders and the Federal Rules.


**Statement 53:  L-3 uses proprietary maintenance software in its AM&M division using the WECMS and BED programs, in addition to the M3 program.  Arce Transcript, relevant pages of which are attached as Exhibit 1, ("Arce Transcript") at 93-95.**

**Response:**  L-3 denies this statement.  "Proprietary maintenance software" is ambiguous.  There is no evidence that M3 is used anywhere in AM&M and all evidence and testimony show that M3 was only used at Proprietary Programs, which does not report any revenue through the AM&M reporting segment.  (D.I. 83 Ex. 21.)  Further, the evidence cited by Airframe provides no support for the proposition that the AM&M division used M3.


**Statement 54:  L-3's proprietary aviation software is not limited to the MID division.  Id.**

**Response:**  L-3 denies this statement.  "Proprietary aviation software" is ambiguous.  M3 is the only software at issue in this case, and it is limited to Proprietary Programs in MID.  (D.I. 83 Ex. 21).


**Statement 55:  L-3 has never denied that it uses software related or derived from the same source code as M3 in units other than the MID; its certifications make no denial of such facts.  See Arce Certification (Mar. 12, 2010) and Spivey Certification (Mar. 12, 2010), attached as Exhibits 5 and 6 to defendant's motion.**

**Response:**  L-3 denies this statement.  L-3 denies that it has utilized any other software derived from the same source code as M3.  Further, Airframe never alleged that WECMS or

BED was derived from its source code and never inquired as to the source code used to create WECMS or BED.  Further, there is no evidence that any of the ARMS code was copied by L-3 in the creation of any software application.  (D.I. 84 ¶¶ 10-12).  Amended Complaint Counts VIII and IX expressly alleged that L-3 infringed Airframe's copyrights to create an infringing aircraft maintenance software to replace the software licensed from ASI and designated the replacement program M3 (¶ 77).  L-3 denied each of the copying and used allegations in its Answer ¶¶ 77-96; 98-108; and in affirmative defenses ¶¶ 2-4; 5-14.

**Statement 56:  Damages for lost profits or reasonable royalty are based on the AM&M, the entire revenue sector of L-3 that engages in aircraft maintenance.  Chodor Report at 14-23, attached as Exhibit 7 to defendant's motion.**

**Response:**  L-3 denies this statement.  No damages for lost profits or agreed reasonable royalty were claimed in the expert report or were related in any manner to any portion of the revenues of the AM&M reporting segment businesses, none of which had access to or made use of M3 or generated any revenue reported as part of AM&M.  (D.I. 83 Exs. 5, 21; Reply Declaration of Adam J. Kessel Ex. 2.)

**Statement 57:  L-3's Rule 30(b)(6) witness as to damages, Hector Arce, stated that he has no knowledge of aircraft maintenance usage in the entire AM&M unit and has provided no basis for limiting the damage claim.  Arce Transcript at 56-60, 66-67, 144-146.**

**Response:**  L-3 denies this statement.  The March 12, 2010 affidavit of Hector Arce specifically showed that two contracts with Proprietary Programs provide the revenues generated by use of M3.  (D.I. 83 Ex. 5.)  He produced records of those revenues (see D.I. 83 Ex. 5 ¶¶ 5-6, Ex. 20).  The March 12, 2010 affidavit of Kenneth Gaylor (D.I. 83 Ex. 21) showed that no AM&M business had access to or use of M3 in any way, nor had M3 generated any revenue for any AM&M business.  The April 21, 2010 Arce Affidavit was marked Exhibit 13 at his April 23, 2010 deposition.  (Reply Declaration of Adam J. Kessel Ex. 2.)  It identified in detail all of the tracking software used by each of the AM&M business – none of which was M3.  Mr. Arce was examined at his deposition with respect to the tracking software used by each of the AM&M businesses.  (Reply Declaration of Adam J. Kessel Ex. 3 at 60-64; 91-101.)

The subject of Arce testimony at pp. 57-60 was ("the use of aircraft maintenance modification, and/or tracking software "not in AM&M but" in any other L-3 division or

reporting unit... "Again at pp. 144-146 et seq. – he was asked about software <u>other than the AM&M businesses</u>" Vertex, JOG, Waco and Crestview – none of the cited testimony supports the assertion made.


**Statement 58:  Airframe's claim of damages $33,592,000 per annum is within the scope of the accepted basis of calculating damages under Georgia-Pacific Corp.  v.  U.S. Plywood Corp., 318 F.  Supp.  1116, 1120 (S.D.N.Y.  1970); Chodor Report at 23.**

<u>Response:</u>  L-3 denies this statement.  First, the statement is a legal conclusion and not a fact.  Second, Airframe's export report does not show that *Georgia-Pacific* provides authority which applies to copyright disputes nor does it show that any aspect of the expert calculation of damages was based upon Georgia-Pacific principles.  Instead, the expert report made none of the analysis or calculations of damages or profits required by Copyright Law standards, by industry practices or by the history and documents of license fees charged by ASI to its customers.


**Statement 59:  The AM&M division's $2.827 billion dollars in revenues in the last calendar year for which annual figures are available is an appropriate base on which to project damages for lost profits as the AM&M division uses in-house aviation maintenance software.  Chodor Report at 16; Arce Transcript at 93-95.**

<u>Response:</u>  L-3 denies this statement.  Neither the cited page of the damage report nor anywhere else in that report does Mr. Chodor show use of, access to or revenue generated by use of M3 by any of the ASI businesses.  His deposition testimony admitted that use of M3 by AMM business was shown only to the extent that he used AM&M revenues as a basis for his calculations.  He admitted that he had not been provided with a single document which showed use of either ASI or M3 software by any of the AM&M businesses.  (D.I. 83 Ex. 19 at 303-307).

Moreover, Mr. Chodor admitted that neither L-3, its predecessors, nor the license agreements with Airframe customers which he relied upon, had used customer revenues as a basis for license fees and that industry practice does not utilize any such basis.  As such use of AM&M revenues was in all respects improper.  (D.I. 83 Ex. 19 at 334-341).

Mr. Arce testified at his deposition to describes a series of military, commercial and two-in house software created 10 years earlier by an AM&M business Vertex, as having been the only tracking software used by AM&M businesses.  (Reply Declaration of Adam J. Kessel Ex. 3

at 93-95.)  No basis for applying any part of much less all net AM&M revenues can properly be based on this testimony.


**Statement 60:  L-3 has failed to produce Spivey as a witness despite the Court's order and no inference can be made from Spivey's assertions as to damages as he has not been made available for testing by Airframe through deposition; Airframe has a motion pending to strike L-3's damages defenses due to its failure to produce the witness. See Airframe's Motion for Sanctions Against L-3 Communications Corporation (Docket #80).**

<u>**Response:**</u>  L-3 denies this statement.  The motion has been decided and the request to strike L-3's damages defenses defense has been denied.


Dated: June 21, 2010

/s/ Adam J. Kessel_____
Kurt L. Glitzenstein (BBO # 565312)
Adam J. Kessel (BBO # 661211)
Danni Tang (BBO# 669563)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA  02110-2804
(617) 542-5070 Telephone
(617) 542-8906 Facsimile

Attorneys for Defendant
L-3 Communications Corporation


<u>Of Counsel</u>

Alan M. Gelb (AG 4254) admitted *pro hac vice*
Kirstin Peterson (KP 6850)
JONES HIRSCH CONNORS & BULL P.C.
Attorneys for Defendant
L-3 Communications Corporation
One Battery Park Plaza
New York, New York 10004
(212) 527-1000 Telephone

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that L-3'S RESPONSE TO AIRFRAME'S "STATEMENT OF UNDISPUTED

FACTS" IN SUPPORT OF ITS STRICKEN MOTION FOR SUMMARY JUDGMENT, filed

through the ECF system, will be sent electronically to the registered participants as identified on

the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-

registered participants on this 21st day of June, 2010.

<u>/s/ Adam J. Kessel</u>
Adam J. Kessel